May it please the court. My name is Justin Bustos and I represent Anthony Brandel. Ms. Fletcher and I have agreed to split our time today with 10 minutes each and out of my 10 minutes, I would like to reserve about two minutes for rebuttal. Mr. Brandel brought this appeal to challenge his conviction. In the opening brief, we raised four issues. Unless the court directs otherwise, I intend to focus my time today on the securities law issues. But first, Mr. Brandel challenges the jury instructions, which I will discuss first, and then second, he challenges the sufficiency of the evidence to establish security. So with respect to the jury instructions, Mr. Brandel contends that the jury instructions were inadequate because they failed to instruct the jury as to the requirements of proving the existence of an investment contract in the context of a joint venture. And Mr. Brandel admits that this constitutes plain error because this law is well settled in the circuit as to what must be instructed to find a joint venture. Counsel, you're talking about the Williamson case and the different factors under that third prong of Howey's test, right? That is correct. And did you make this argument below or are we here on plain error review now? We were on plain review. It was not raised below. So this court... Counsel, have you cited any case in which a court has held that what you're claiming was error here in jury instructions was error? So is there any you've cited to us where a court has, putting even aside plain error, has overturned a conviction because of the failure to give more definition to the third Howey factor? The answer is no, we did not cite any case that found plain error in that context. No, any error, any instructional error at all in failing to instruct, as you say, the district court here should have instructed the jury. No, I did not cite any cases, but to be fair... So if there's no case anywhere that says it's even error not to give the instruction that you said should have been given, how can it possibly be plain error? Absolutely, and I think I'll, if I may, answer that question in two parts. So although no case has specifically addressed the jury instruction, it's equally true that when we're talking about joint ventures and general partnerships, the issue typically comes up in civil enforcement actions. If you look through the criminal case law, there really aren't cases addressing joint venture agreements and general partnerships in the criminal context. And to your last question as to how do you show plain error without a specific case, my answer is this, the case law on this issue has been settled since 1989, since this court issued its decision in Piedmont. And since that time, for the past 30 years, every single time the Ninth Circuit has issued a published decision on either general partnerships or joint venture agreements, it always relies on the Williamson factors. And let me give you an example. The preeminent case in this area is the Supreme Court's decision in Howey. That sets forth the three elements for investment contract. Below, it was undisputed, everyone agreed that the jury must be instructed on the Howey factors. And that's because this law has been settled since 1946. And so my argument is the exact same analysis applies with respect to Williamson. Because it's been settled in this circuit for 30 years, then the jury should have been allowed to have that same consideration in order to determine whether or not the joint ventures in this case were in fact securities. But you're not arguing that instruction number 27 on Howey was erroneous in anything that it said. Your argument is there needed to be more. Correct. My argument is that Howey alone is inadequate because it didn't give the jury an adequate framework for evaluating the issue. Did you cite any case with an example of a court in a criminal case actually giving the instruction, you say, or some form of the instruction that you say the district court here should have sui sponte given? No, I did not. But again, I could not find any criminal cases that actually charged securities fraud in the context of either a joint venture or a general partnership. Every case when I did my research addressing these types of business arrangements were really in the civil enforcement context. And then most of that does that make this airplane? Again, Your Honor, I fall back to the fact that the law in the circuits been settled for 30 years. If you had done research on joint venture, and securities fraud, or even securities investment contract, this court's case law would have popped up. And every time this court discusses it, the court relies upon Williamson. And if Williamson is the standard that this court must rely upon in analyzing the issue, the jury should have been able to have that same consideration. Let me ask from the bigger picture, how does it make any practical difference given that each of the convictions for security fraud was accompanied by a conviction for wire fraud where these issues don't arise at all? Sure. And I think that's a two part question. So it makes a difference because the jury certainly could have reached the opposite conclusion in this case. And so the first point is the government tries to rely upon the first and third Williamson factors. And given my time, I'll try to convince that my question is simpler than that. Sure. Even if we just get rid of all the security for fraud convictions, because there's no security involved. A wire fraud convictions stand, don't they? And the sentence appears to be driven by the amount of the loss, which would be the same either way. I disagree with that, your honor. And here's why. So if the securities fraud counts go away, the rest of the conviction goes away as well. And that's because count one, the conspiracy charge charged it as both a conspiracy to commit securities fraud and a conspiracy to commit wires fraud. We don't know whether the jury found the wire fraud or the conspiracy charge infirm because the jury could have convicted on an inadequate basis. And then going forward with the wire fraud, the wire... What would be missing for wire fraud? With wire fraud, the instructions allowed the jury to convict based on co-schemer liability. And so if we lose the conspiracy because it was charged as either wire fraud or was charged as securities fraud, then there could have been an inadequate basis to convict on wire fraud based on co-schemer liability. I don't understand the substance of that. I mean, what's more difficult about convicting for wire fraud than for securities fraud or finding a conspiracy for wire fraud rather than securities fraud? Well, the difference is the existence of an investment contract. And then the wire fraud has the extra element of having the involvement of a wire. But the issue is that with respect to... And that's it? Is that the only thing that you have to prove for wire fraud that you wouldn't have to prove for securities fraud is the existence of a wire communication? That's correct. I've never ever heard anybody tripping over that piece of it. I mean, it's there. It has to be charged. But is there any serious prospect the jury here wouldn't have convicted for wire fraud or conspiracy to convict or to commit wire fraud? Absolutely, Your Honor. And the reason is that my client contends, although he was an unknowing participant in this scheme. So in other words, he did not know that this was a fraudulent scheme. And so if you get rid of the conspiracy, his involvement was really on some emails and serving as a loan process. And so... Stop there, because his defense, you're right, was that I'm an unknowing participant. The jury plainly did not buy onto that theory. There wasn't anything about the securities fraud theory that made the conviction easier. So even if you decide there's not an investment contract, so you can't convict for securities fraud, all the same elements for wire fraud are there except for the wire element. And you just acknowledge the emails. So I don't see how it could possibly be the case that an acquittal would have come if the securities fraud wasn't there. Well, the reason is this. Without the conspiracy charge and the co-schemer liability, the jury may not have convicted, because we don't know if the jury convicted because he actually committed wire fraud or if they convicted because he was part of a criminal conspiracy, the purpose of which was to commit wire fraud. And with that, I'll save my last minute for Yvetel. Thank you. All right. Let me actually ask you a question if you can answer it briefly. You wanted to argue sufficiency of the evidence, and I'm particularly interested in your transaction. And regardless of how the fee is really characterized, didn't he expect to have some net financial gain out of that? Well, he did, Your Honor. Ultimately, based on the way it worked out, he would have his success fees. But we analyzed this in terms of what was the motivation behind the contract. And Mr. Giannopoulos was very clear that he was motivated by the desire to fund USA Springs. He was not motivated by the desire to actually gain a profit on this. And the example we decided for this was the United States Supreme Court's case in United Housing. In that case, it involved the purchase of stock in order to lease these rental units. And the analysis was the stock was not purchased for the purpose of capital appreciation in order to make money. But somebody can have dual motivation. The requirement is really an expectation of profits from the efforts of a promoter or some third party. And so here, I'm struggling to understand why the expectation of a net gain financial isn't enough to meet that standard. Because if you look at where the financial gain was coming in this context, it would have come from USA Springs' ability to operate its business. The financial gain wasn't coming from Malum. Malum was only providing the financing to allow USA Springs then go open up its business and operate the water bottling plant. So any fee would have come from the efforts of Malum. Right. Well, let's put 10 minutes on the clock for Ms. Fletcher. I don't want it to be disadvantaged by having to go second. Always happens to be the case. Counsel? Good afternoon, Your Honor. May it please the court. My name is Maysoon Fletcher. I represent Mr. Warris, and I'll be focusing on the due process violation that took place. In Mr. Warris' case, the fundamental right to due process was violated because the prosecution relieved itself of a very heavy burden of proving material fact beyond a reasonable doubt. In his case, the heart of the government's theory against him was that he was deceiving investors by promoting fake Brazilian bonds to lull these investors from seeking legal action. In its opening and its closing, it told the jury that his prominent, most critical goal in the case was to lull the were fictitious. They told the jurors that they were going to establish that he knew that he understood that they were fake. They purposely avoided telling the jurors that they were going to actually establish that these bonds were fake. Prior to trial. So, Counsel, is your argument that, let's say, for example, in his deposition, instead of what he actually said, let's say he said, yes, I knew the bonds were fake. Does the government still have to independently prove the bonds were fake? Beside your client's admission that he knew the bonds were fake, if that had happened? Your Honor, I think that's a great question. And I think that that would change the trajectory of what, because he would have admitted at that point. So I agree with you that if he had admitted it, then the government doesn't have to, quote, unquote, independently prove it. But if that's the case, why can't the government advance circumstantial evidence that other than saying he knew the bonds were fake, he actually knew the bonds were fake? Like, for example, by testifying that the supposed proceeds from the sale of two bonds was $60 in 1456. And if the jury decided that was a complete lie, which I think the evidence would have allowed them to do, along with the other evidence that they could have circumstantially decided your clients knew they were fake, why isn't that evidentiarily the equivalent of him saying, I knew they were fake? Your Honor, the problem with the government's circumstantial evidence is that it relies upon multiple layers of inferences to create this foundational fact that they're fake. Sort of like every trial. But in this case, Your Honor, the government made this foundational fact that they're fake, his actual deceit. That's where it says he's deceiving investors. That's where he steps in. So it goes to the element of deceit, the fraud itself, to his knowledge. And they're relying on this circumstantial evidence to tell the jurors, look at this circumstantial evidence, infer that these things are fake, and then infer further from there that he knew they were fake, or reverse it in reverse. Anywhere within that evidence that they relied upon, there could have been an alternate equally presumption that would say these things are real. In reasonable doubt, Your Honor, is a standard we need to hold the In re Winship says that they have to prove... So how is the government not held to that standard here? There's a series of inferences, the jury could have disbelieved the inferences, the jury could have had reasonable doubt about any of the jumps, in which case they would not vote to convict. But they voted to convict. So I really don't, I don't know that I understand the argument which is posed in terms of shifting the burden. I mean, it's not a frequent case where you've got the defendant acknowledging to the world, I know it's a fake, I know this is a fraud. More often than not, the proof has to involve inferences that include, the evidence was so overwhelming that surely he knew, which is sort of the situation the government's arguing here. How is this different from most any other fraud case? Your Honor, the difference in this particular case is that the evidence that's being presented is not telling the jury with certainty that these particular bonds are in fact fake. They're telling the jury, look at all this stuff that Mr. Warris said, for instance, that he said that one of the bonds is going to be sold for $60 million. That doesn't tell us that the bond in fact is fake. Well, but you've already acknowledged that that's not an element of the offense because if they had your client on the record acknowledging that he knew they were fake, the question of whether they actually were fake or he might have been mistaken isn't something the jury would have to find. What matters here is your client's sure that you've got anything that you can point to that requires the government to prove this proposition that you're arguing they're shifting the burden of proof on. If the government doesn't have to prove they're actually fake, what more is required? Your Honor, so my issue is two parts. You don't have to find that the burden was shifted in order to find a due process violation. The due of the burden of proving that these things were fake. The government told the jury. Stop right there. If they're not required to prove that they were fake, what burden has the government allegedly relieved itself of? So your Honor, that's where I disagree. I believe they are required to establish that they are fake because that is the deception. The government is telling the jury that Mr. Morris's deception in this case is these fake bonds. But they're not proving that they're fake. It goes to the core of his role in the scheme to defraud. And that's why it is a material fact that they needed to establish. And they said ahead of time, hey, we're not going to establish that. So how can that meet the reasonable doubt standard when the jury instructed that they had to find beyond a reasonable doubt that your client didn't act in good faith? Weren't they told good faith is an absolute defense on which the government has the burden of proof beyond a reasonable doubt? Yes, Your Honor, they did. And this goes to his good faith. The evidence showed that Mr. Morris in good faith did believe in the value of these bonds. Well, but if the evidence that showed that he would have been acquitted because the jury was convinced, not that they had to affirmatively find he acted in good faith, but unless they were convinced beyond a reasonable doubt that he didn't, they had to acquit, right? That's correct, Your Honor. But the jury was also told by the government that all they were going to establish is that he knew this fact. So the government was led to believe, it was given this impression, that this was already established fact. All they needed to do is show that he knew it. They didn't need to establish the fact. I sit here right now, and as Your Honor sit here right now, reasonable doubt requires certainty. Can we be certain that these Brazilian bonds were fake? There's no way that that information told to the jury and not proven with certainty didn't affect their mind. That's the deceit that they claim. There was another problem. If we have the requisite certainty, and I'm not sure certainty is the right term, but if we have the required confidence that your client believed they were fake, isn't that enough to support the conviction? Your Honor, the problem is not that the government wasn't telling the jury that he believed they were fake. The government specifically said that he knew they were fake. That means they're telling the jury these things are fake, but we're not going to establish that they're fake. We're just going to tell you, look at, we're just going to show you his knowledge of these things. And if you look at the specific evidence that was produced, you'll see that Mr. Warris actually is talking to his own co-defendants and telling them we're going to pay for something with the sale of one of these bonds. So he truly did believe that they were real, and the government was trying to prove that. I mean, that strikes me as pretty strong circumstantial evidence that your client was not acting in good faith here and believed that the instruments were fake. Understood, Your Honor, and I appreciate that comment. The problem with that particular piece of evidence is that they're referring to a business deal going on in Bank of New York. Has absolutely nothing to do with these joint ventures. I'm sorry, has nothing to do with the Brazilian bonds? It has to do with the Brazilian bonds, but the reasoning he was doing that had to do with a business transaction they were doing with Bank of New York, it doesn't mean that the bonds themselves aren't real. It means they didn't have whatever was required to satisfy a deal with Bank of New York. The point is that there's no certainty that these bonds are fake. And Your Honor, I apologize, I'm out of time. I want to make sure that there's some time left for rebuttal. All right, you can take what's left. Thank you, Your Honor. Good afternoon, may it please the court. Adam Flake. Can you hear me okay? We've had a little technical difficulty on our end. Okay, good. So with respect to the argument that Ms. Fletcher was addressing, as I pointed out in my brief, I don't understand this as a burden-shifting argument. The government was required to prove that Mr. Morris acted with intent to defraud. And one of the ways that we proved that is he acted in such a way as if he believed those bonds were fake, he went and deposited them with Merrill Lynch so that he could tell one of his investors, hey, Merrill Lynch wouldn't hold these if these didn't have value. He wrote one of the judges referenced about filling this document with BS. And regardless of whether that went to one of the joint venture agreements, it certainly bore on the validity of Brazilian bonds. With respect to Mr. Giannopoulos and his motivation versus his expectation, I don't think that the standard is what motivates you to do this. I think the standard is how's the deal set up? What do you expect to gain from it? And I mean, it was funny what he said in the book. He said to make $600,000. Well, I didn't care about that. That is kind of a funny thing to say that somebody wouldn't care about having $600,000 flow into their bank account. But the fact remains, I think that the deal was structured in such a way that he had an expectation profit. The United Housing case is quite different. What happened there was they, not to get too deeply into the weeds, but they set up a co-op. And as part of the co-op, they had shares, but the shares couldn't change in value. And so it wasn't like these shares could get more and more valuable. They set it up in such a way that they could live in these houses. And part of the deal was with shares, but they could only be bought and sold for that. I mean, they could appreciate very modestly, but it wasn't set up in such a way that they were investing in these shares. The last thing I wanted to mention is with respect to the jury instruction, I just direct the court's attention to Anderson that I cited in my brief. And that case says that if there's no argument that would bear on a omitted instruction, then any possible error can affect substantial rights. And the investment contract, whether it constituted a security, it just was not part of the trial. It wasn't a thing. And that's not how it was argued at trial. And so even if there was error, which I don't think there was, it wouldn't arise to plain error affecting substantial rights. And if the court has questions, I'm happy to answer it. Otherwise, I'll yield the rest of my time. And there was no error because the defense wasn't framed that way? No, there was no error because... This is labeled as a joint venture, right? So that should... There was no error because the jury was correctly instructed on the law, on the prongs of Howey. I mean, certainly the court could have gone farther and could have provided additional, more specific instructions based on this Williamson case, but neither party asked it to and the jury was not in any way misled. The jury was correctly instructed as to what we needed to prove to show that there was an investment contract. And as the opposing counsel mentioned, nobody has cited a case saying that that instruction is required. And in the absence of a requirement that that instruction be given, I don't see how they can show error. Was there any factual argument made or evidence offered to suggest that these didn't qualify as securities or as investment contracts? Not as such, Your Honor, no. I shouldn't even say it not as such and not that I'm aware of at all, Your Honor. If there are no further questions, I'll conclude. Any questions, Judge Bennett, Judge Clifton? No, no, Judge Coyne. Thank you. All right. Let's give Mr. Mostos a minute and Ms. Fletcher a minute as well, wrap up and respond to any points raised by the government. Thank you. I'll briefly respond to the argument on Mr. Giannopoulos. And when we're talking about the Howey factors, third factor is you're led to expect profits solely from the efforts of others. This court has said that that factor is met when it's the efforts made by someone other than yourself, which are the undeniably significant ones. And, you know, zeroing in on Mr. Giannopoulos' testimony, it was very clear that Mr. Giannopoulos, because he was a big investor in USA Springs, he was trying to get the loan for USA Springs. The only way that there would have been a profit or a successful investment would be if USA Springs could then go out and deploy that capital and could run a successful business. So for that reason, we do not believe that the funding commitment is an investment contract. Is it true, as Mr. Flake has suggested, that there was no argument made to the jury that these were securities or not investment contracts? So there was no argument made the jury would respond to, even if they had been instructed in more detail with regard to the requirements to have a security? No, I disagree with Mr. Flake. Mr. Brandl's trial counsel did state that these are not securities. It was not an elaborate argument, but that was made. And I contrast that with the government's argument that the government never asserted whether or not this is security. The jury, these joint ventures were securities. And we do believe there is sufficient evidence, as we set forth in my briefing, but I see that I'm over time. All right. Thank you. Ms. Fletcher? Thank you, Your Honor. So Your Honor, bringing us back to the point that the government made the Brazilian bonds being fake, the core of Mr. Warris' deception. That was the element of to not show that these things are fake, and then just say he knew they were fake. But they're required to prove every necessary fact beyond a reasonable doubt. But they told us from the outset, we're not going to establish that. If, in fact, these bonds were real, which we don't know with certainty either way, because the government chose not to establish it, and they could have. They could have brought in an expert witness. We know for sure right now whether they're real or not. But if they were, in fact, real, then Mr. Warris, in good faith, when he was speaking to these handful of individuals, was speaking from a place of truth. What he was telling them was genuine. He believed in these things. He didn't own Malum. He didn't have control over the money. He was telling them that when these things are sold, he would persuade the owners to repay them. So with that, Your Honor, I'd ask that you find that the government did violate his right to due process and overturn the conviction. Thank you. All right. Thank you, all of you, for your argument today. The matter is submitted. That concludes our argument calendar for this morning, so we'll recess until tomorrow. Thank you, Your Honor. Thank you.
judges: Clifton, Nguyen, Bennett